IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID CREWS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-3277 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| VINCENT MARTINEZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Crews brings this action against Defendants Vincent Martinez and Joshua Blankenship pursuant to 42 U.S.C. § 1983 alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution. Before the Court is Defendants' motion for summary judgment [59]. For the following reasons, Defendants' motion [59] is denied. This case is set for a telephonic status hearing on April 13, 2022, at 9:30 a.m. The Courtroom Deputy will place the call-in information on the docket in a separate minute entry.

**I.     Background**

The facts are taken from the parties' respective Local Rule 56.1 statements and supporting exhibits [61, 64]. The Court is also entitled to consider any material in the record, even if it is not cited by either party. Fed. R. Civ. P. 56(c)(3). "When we cite as undisputed a statement of fact that a party has attempted to dispute, it reflects our determination that the evidence cited in the response does not show that the fact is in genuine dispute." *NAR Bus. Park, LLC v. Ozark Auto. Distribs., LLC*, 430 F. Supp. 3d 443, 446–47 (N.D. Ill.).

On May 20, 2017, at approximately 9:45 p.m., Illinois State Troopers Vincent Martinez and Joshua Blankenship ("Defendants") were patrolling the southbound lanes of I-94 in Chicago near the 95th Street exit. [61 at ¶ 1.] At that time, Plaintiff was driving nearby in a Silver Chevrolet

Impala traveling southbound in the rightmost lane of I-94. [61 at ¶ 2; 65 at ¶ 1.] Defendants state that they saw from their vehicle that Plaintiff was operating his vehicle without wearing a seatbelt. [61 at ¶ 2.] Plaintiff does not recall whether he was, in fact, wearing a seatbelt at that time. [61 at ¶ 4; 64 at ¶ 2.] Plaintiff contends that the officers were never traveling alongside him and instead were three traffic lanes away from him. [64 at ¶ 2.] Plaintiff questions the officers' ability to see whether he was wearing a seatbelt from such distance and through the car's heavily tinted windows. [*Id.*]

Defendants initiated a traffic stop and Plaintiff pulled over into the right shoulder lane. [61 at ¶ 3.] Once both cars were stopped in the shoulder lane, Defendants exited their patrol vehicle and approached Plaintiff's car. [*Id.* at ¶ 10.] As Defendants approached Plaintiff's car, none of the car windows were rolled down, but when Defendants reached the vehicle, Plaintiff put both the front driver- and passenger-side windows all the way down. [*Id.* at ¶ 11.] Plaintiff asked why he had been stopped. Defendants replied that he had been pulled over because he was not wearing a seatbelt. [*Id.* at ¶ 12; 65 at ¶ 2.] Defendant Martinez, who was standing next to Plaintiff by the driver-side window [65 at ¶ 5], asked Plaintiff for his license and proof of insurance. [61 at ¶ 13.] Plaintiff provided proof of insurance but was unable to provide his license or other form of identification. [*Id.*] Martinez then told Plaintiff that he could just tell Martinez his name, which Plaintiff did. [*Id.* at ¶ 14.] Martinez returned to the patrol vehicle to perform a LEADS inquiry check of Plaintiff's name and date of birth, as well as a Secretary of State image check to confirm Plaintiff's identity. [*Id.* at ¶ 19.] Plaintiff believes that while verifying Plaintiff's identity, Martinez also discovered that Plaintiff possessed a valid FOID card, but Defendants dispute this assertion. [69 at ¶ 17.]

Martinez returned to Plaintiff's car after confirming his identity. According to Martinez,

2

as he approached the vehicle, Plaintiff's "breathing also became elevated and his hands began to shake uncontrollably," making him appear extremely nervous. [61 at ¶ 17; 61-1 at 3.] Martinez asked Plaintiff why he was nervous, since he looked like he was shaking. [61 at ¶ 17; 64 at ¶ 17.] Plaintiff responded: "I don't think I'm shaking." [64 at ¶ 17; 61-3 at 24:1–13.] Martinez then told Plaintiff that he smelled an odor of marijuana coming from the car. [61 at ¶ 15; 65 at ¶ 11.] Martinez noted in his field report that he "noticed several pieces of cannabis residue on the seat and floorboard of the vehicle" [*id.* at ¶ 16], but Martinez neither recovered nor inventoried any residue [65 at ¶ 16; 69 at ¶ 16]. When Martinez asked Plaintiff to exit his vehicle, Plaintiff complied. [61 at ¶ 18.]

Martinez then proceeded to conduct a search of Plaintiff's car. [*Id.* at ¶ 20.] At some point during the search, Defendant Blankenship placed Plaintiff into the back seat of Defendants' patrol vehicle. [61 at ¶ 21.] Blankenship informed Plaintiff that he was being detained because his car smelled like marijuana. [*Id.*] While in the patrol car, Plaintiff could see Martinez searching the entire car, including under the seats and in the trunk of the car, which Plaintiff later characterized as Martinez and Blankenship "doing their job." [*Id.* at ¶ 22; 61-3 at 30:20–25 – 31:1–23.] While searching under the driver's seat, Martinez located a .40 caliber semi-automatic pistol with a light/laser attachment and a magazine with ten live rounds. [61 at ¶ 23.] The gun was uncased, and there was nothing obscuring Martinez's view of it. [*Id.*]

After discovering the firearm, Martinez returned to the patrol car and asked Plaintiff who owned the gun; Plaintiff responded that the gun was his. [61 at ¶ 26.] Martinez asked if Plaintiff had a FOID card and, according to Martinez, a concealed carry license, though Plaintiff does not remember Martinez asking him about a concealed carry license. [*Id.* at ¶ 27.] Plaintiff informed Martinez that he had a FOID card. [*Id.*] On the date of these events, May 20, 2017, Plaintiff held

3

a valid FOID card but did not have a concealed carry license. [*Id.* at ¶ 25.] Defendants arrested Plaintiff for aggravated unlawful use of a weapon and his car was towed. [*Id.* at ¶ 28.]

Plaintiff was taken to the Chicago Police Department 1st District Headquarters for fingerprinting and processing. [61 at ¶ 29.] After arriving at the 1st District Headquarters, Martinez contacted Felony Review and spoke with Assistant State's Attorney Maurice Alayo and relayed the events of Plaintiff's traffic stop. [*Id.* at ¶ 30–31.] At 12:08 a.m. on May 21, 2017, ASA Alayo approved felony charges pursuant to 720 ILCS 5/24-1.6(3)(B-5). [*Id.* at ¶ 31.] Plaintiff was also issued a citation for not wearing a seatbelt and for driving without having his driver's license on his person. [*Id.* at ¶ 32.]

On June 8, 2017, the State's Attorney of Cook County sought a Bill of Indictment of Plaintiff for the offense of aggravated unlawful use of a weapon related to the May 20, 2017 traffic stop. [61 at ¶ 34.] Martinez testified before a grand jury [*id.* at ¶ 35] and the grand jury returned a True Bill of indictment against Plaintiff for aggravated unlawful use of a weapon [*id.* at ¶ 36].

Plaintiff moved to suppress the firearm, and a hearing on the motion took place on September 26, 2018, in the Circuit Court of Cook County Criminal Division. [61 at ¶ 37.] Martinez and Blankenship both testified. [*Id.*] Following testimony and argument, the Court sustained the motion. [*Id.*] The court rendered its decision as follows:

> Once the trooper learned that the defendant or we should say motorist has a valid driver's license, he issues the citation. He doesn't engage in a search of the car looking for the gun, which I believe the Defense was more accurate in his argument that when he found out he had a valid driver's license, he also found out that he had a valid FOID card because those things are linked together within that computer system, and at that point, he went looking for a gun. So his search exceeded the scope of that stop. Motion to suppress sustained.

[61-2 at 36:3–12.] Following the court's ruling, the State dismissed the case nolle prosequi. [61 at ¶ 38.]

4

After the termination of his criminal case, Plaintiff initiated this civil action by filing a complaint in the Northern District of Illinois on May 15, 2019. [1.] Invoking 42 U.S.C. § 1983, Plaintiff's sole remaining count[1] asserts that Defendants violated his rights under the Fourth and Fourteenth Amendments by (a) arresting him without probable cause; (b) falsifying information to facilitate his arrest; and (c) conspiring with other officers to deprive Plaintiff of his constitutional rights. [1 at ¶¶ 17–25.]

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "On a motion for summary judgment, the moving party has the burden of demonstrating that there are no genuine questions of material fact and that he is entitled to judgment as a matter of law." *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 (7th Cir. 1994). "Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).  In evaluating a motion for summary judgment, the Court will construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016).

---

[1] Plaintiff initially asserted a second claim for failure to train against the Director of the Illinois State Police Department, but subsequently voluntarily dismissed that claim and removed the Director as a defendant in this case. [28, 31.]

### III. Analysis

As an initial matter, Plaintiff asserts a claim for false arrest—not unlawful search—in violation of the Fourth Amendment. [See 1 at ¶ 18 ("Defendant Trooper Martinez arrested Plaintiff without probable cause, in violation of Plaintiff's rights secured to him by the Fourth Amendment.").] At times, Plaintiff seems to conflate these two types of claims. He states that Defendants are not entitled to qualified immunity because they "engag[ed] in an apparent, illegal search" [63 at 7], but refers to his claim throughout summary judgment briefing as a "false arrest claim" [see, e.g., id.]. Based on the text of the complaint, Plaintiff's claim is properly characterized as seeking relief for false arrest in violation of the Fourth Amendment.

Turning to the instant motion, Defendants assert that they are entitled to summary judgment because they had probable cause to effectuate the arrest and that they are entitled to qualified immunity in any event. They further argue that Plaintiffs other arguments—that Defendants conspired with each other and falsified evidence to deprive Plaintiff of his constitutional rights—fail as a matter of law.

#### A. Probable Cause

Defendants assert that they had probable cause "for every aspect of their interactions with Plaintiff and thus did not violate Plaintiff's rights under the Constitution because "'the existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest.'" *Cibulka v. City of Madison*, 992 F.3d 633, 638 (7th Cir. 2021) (quoting *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 713–14 (7th Cir. 2013)). That absolute defense applies even if the ultimate reason for the arrest "is not 'closely related' to the offense stated by the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 148 (2004). Thus, Defendants maintain, Plaintiff's false arrest claim fails because they had probable cause to suspect that Plaintiff

had committed as many as three crimes: driving without wearing a seatbelt, possession of marijuana, and aggravated unlawful use of a weapon.

### 1. The Traffic Stop

"An officer has probable cause for a traffic stop when she has an 'objectively reasonable' basis to believe a traffic law has been violated." *United States v. Dowthard,* 500 F.3d 567, 569 (7th Cir. 2007). Defendants argue that they had probable cause to conduct a traffic stop because they observed Plaintiff driving without wearing a seatbelt, and as they see it, even "Plaintiff does not dispute that he was not wearing a seatbelt at the time he was pulled over." [68 at 4.]

Admittedly, it is not entirely clear whether Plaintiff intends to challenge the validity of the initial traffic stop, or whether his claim is based instead on the conduct that followed. At times, Plaintiff seems to challenge the legality of the initial basis for the stop. [See 63 at 7 ("Even if the Troopers had a right to stop him, which we contend they did not ….").] At other points, however, Plaintiff seems to concede that Defendants had probable cause to conduct a traffic stop, asserting that his encounter with Defendants "should not have been more than a simple traffic stop." [63 at 1.] But in the Court's reading of the record and the parties' briefing on this motion, Plaintiff does not admit that he was not wearing a seatbelt. He simply does not recall. Plaintiff's inability to say one way or the other on this point is not by itself enough to raise a genuine fact dispute. See *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004). But when Plaintiff's inability to recall this central fact is considered alongside other evidence calling into question the officers' ability to see into his vehicle, the question of whether Defendants had probable cause to conduct a traffic stop is not suitable for resolution by the Court on summary judgment. See *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008) ("The probable cause determination must be made by a jury 'if there is room for a difference of opinion concerning the facts or the reasonable inferences

to be drawn from them" (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993))). The specific evidence to which Plaintiff points that might make a jury skeptical of Defendants' claim to have actually observed Plaintiff driving without a seatbelt includes (a) the heavily tinted windows of his car, (b) the distance of three lanes of interstate highway from which Defendants made their observations, and (c) the time of day (9:45 p.m. and thus well after the sun had gone down). These contextual nuances go well beyond mere "speculation and conjecture," thereby creating sufficient room for differing interpretations by the trier of fact. *Cf. Williams v. Brooks*, 809 F.3d 836, 842 (7th Cir. 2016) (plaintiff's statement about his normal habit was not enough of using turn signal not enough to negate officer's testimony to the contrary).

### 2. Drug Possession

Furthermore, even assuming that Defendants did have probable cause to conduct the initial traffic stop, something more would be necessary to justify the subsequent, intensive search of Plaintiff's car which led to the recovery of the gun and Plaintiff's arrest. Under the "automobile exception" to warrantless searches, "[t]he police do not need a warrant to search a vehicle when they have probable cause to believe it contains evidence of criminal activity." *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014). "Smelling marijuana provides probable cause sufficient to trigger the automobile exception." *United States v. Mayorga*, 2016 WL 3459709, at *6 (N.D. Ill. June 24, 2016) (citing *United States v. Mosby*, 541 F.3d 764, 768 (7th Cir. 2008)). But a seat belt infraction will not suffice, as the Supreme Court "has expressly rejected the practice of a warrantless 'search incident to [a] citation' for a traffic violation." *Huff v. Reichert*, 744 F.3d 999, 1009 (7th Cir. 2014) (quoting *Knowles v. Iowa*, 525 U.S. 113, 118–19 (1998)). This analysis thus takes on the character of "the thigh bone is connected to the knee bone, which is connected to the ankle bone," as each link in the chain of justifications must withstand scrutiny.

Here, Defendants contend that they had probable cause to conduct a warrantless search under the automobile exception because Martinez smelled marijuana, "noticed several pieces of cannabis residue on the seat and floorboard of the vehicle," and perceived that Plaintiff was nervous because his "breathing also became elevated and his hands began to shake uncontrollably." [61 at ¶ 17; 61-1 at 3.] But Plaintiff disputes these facts as well. He asserts that there was never marijuana in the car, nor was there any marijuana "residue" present anywhere in the vehicle while Plaintiff possessed the vehicle. [69 at ¶ 13.] Plaintiff also disputes Martinez's observation that his hands were shaking and his breathing was elevated. [69 at ¶ 10.] Defendants counter that they "noted both the odor of marijuana coming from Plaintiff's vehicle and the presence of marijuana residue in Plaintiff's vehicle during the traffic stop" [*id.*], yet no marijuana or marijuana "residue" was inventoried.

To decide as a matter of law that Defendants had probable cause to conduct a warrantless search pursuant to the automobile exception, the Court would have to weigh the evidence and credit Defendants' story over Plaintiff's. If Defendants had dash cam or body cam video that definitively confirmed their version of the events, or if they had inventoried the marijuana residue they claim to have observed, there might be justification for thinking that a jury could only return one reasonable verdict in this case. See *Williams*, 809 F.3d at 842 ("When the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape") (citing *Scott v. Harris*, 550 U.S. 372, 379-80 (2007)). But especially on summary judgment, where the Court must construe the facts in the light most favorable to the non-movant, see *Bell*, 827 F.3d at 704, the Court cannot make such determination here. See *Rouei v. Vill. of Skokie*, 61 F.Supp.3dd 765, 771 (N.D. Ill. July 28, 2014) (denying officer defendant's motion for summary judgment where his

9

argument "essentially boils down to the proposition that because no one can directly refute [defendant's] claim regarding what he saw at the time, a jury essentially has to take his word for it").[2]

### B.     Qualified Immunity

Defendants argue that even if the undisputed facts do not show that they had probable cause, the Court nonetheless should grant their motion for summary judgment on qualified immunity grounds. To determine whether Defendants are entitled to qualified immunity, the Court considers "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019). In the context of a false arrest claim, an "arguable probable cause" standard applies, which entitles Defendants to qualified immunity "'as long as the officers reasonably, albeit possibly mistakenly, believed that probable cause existed.'" *Cibulka v. City of Madison*, 992 F.3d 633, 638 (7th Cir. 2021) (quoting *Fleming v. Livingston Cnty.*, 674 F.3d 874, 880 (7th Cir. 2012)).

Defendants premise their qualified immunity assertion on what they consider to be undisputed facts that (a) Plaintiff was not wearing a seatbelt, and (b) Plaintiff's vehicle smelled of marijuana. But as the Court explained above, these facts are disputed, and must be resolved at

---

[2] As Defendants note, because conspiracy "is not an independent basis of liability in § 1983 actions" (Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008)), claims for false arrest and conspiracy to commit a false arrest often rise and fall together. Here, because the two Defendants were at times apart from each other during the search and arrest of Plaintiff, the argument for a conspiracy claim appears to be weaker that the false arrest claim itself. While "plaintiffs can use circumstantial evidence to establish a conspiracy," it is equally true that such evidence "cannot be speculative." *Sanchez v. Village of Wheeling*, 447 F. Supp. 3d 693, 705 (N.D. Ill. 2020) (quoting *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015)). And the line between "circumstantial" and "speculative" evidence can be difficult to draw sometimes. Because Defendants have not completely negated any non-speculative theory in support of a conspiracy, the Court will not forbid Plaintiff from advancing a conspiracy theory at this time. With that said, if the full presentation of evidence reveals only a speculation-based claim, the Court will consider a motion for judgment as a matter of law on this point and the conclusion of Plaintiff's case-in-chief should this case go to trial.

trial. Even if Defendants' observations do not rise to the level of establishing probable cause, indeed it is possible that their suspicions were at least arguably reasonable, in which case they would be entitled to qualified immunity. But the Court cannot determine that one version of the story is true while the other is not when there is sufficient evidence in the record to make both Plaintiff's and Defendants' stories plausible. And on Plaintiff's version of the events, Defendants concocted a convenient story about his failure to wear a seatbelt and the aroma of marijuana wafting out the windows of his car as a pretext for searching the vehicle from stem to stern. If the trier of fact were to credit Plaintiff's version, qualified immunity would not shield Defendants from Section 1983 liability.

Defendants also argue that their consultation with ASA Alayo entitles them to qualified immunity, because "'[c]onsulting a prosecutor may not give an officer absolute immunity from being sued for false arrest, but it goes far to establish qualified immunity.'" [60 at 8–9 (quoting *Zimmerman v. Doran*, 807 F.3d 178, 183 (7th Cir. 2015)).] But here, unlike in *Zimmerman*, Defendants consulted ASA Alayo *after* they had already arrested Plaintiff, not before or during their interactions with Plaintiff. *Cf. Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004) (Defendant "consulted with the prosecutor before making the arrest," and so "having consulted and been instructed to arrest [the plaintiff], he had a reasonable basis for believing that he had probable cause to make the arrest"). It bears mentioning as well that Defendants presumably provided to the ASA the same version of the events that they have presented here, and that version is vigorously contested by Plaintiff. In these circumstances, consultation with an ASA does not entitle Defendants to summary judgment on qualified immunity grounds.

### C. Other Claims

Although the Court denies Defendants' motion for summary judgment on the sole remaining claim in this action, the Court addresses briefly Plaintiff's other arguments in the interest of streamlining the issues that remain open for resolution at trial or through settlement. Two persuasive arguments by Defendants are particularly worth mention. First, there is no federal claim for malicious prosecution under Section 1983 because Illinois recognizes the tort of malicious prosecution and thus provides an adequate remedy. See *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011)); *Parish v. City of Chicago*, 594 F.3d 551, 553 (7th Cir. 2009); *Newsome v. McCabe*, 256 F.3d 747, 750-51 (7th Cir. 2001). Second, "a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony" and "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Rehberg v. Paulk*, 566 U.S. 356, 367-69 (2012).

### IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [59] is denied. This case is set for a telephonic status hearing on April 13, 2022, at 9:30 a.m. The Courtroom Deputy will place the call-in information on the docket in a separate minute entry.

Dated: March 31, 2022

Robert M. Dow, Jr.
United States District Judge